UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.F.,<br><br>        Plaintiff,<br><br>    v.<br><br>LELAND DUDEK,[1]<br>Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 24-cv-06077-SVK<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART COMMISSIONER'S DECISION; REMANDING CASE**<br><br>Re: Dkt. Nos. 12, 18, 19 |

Plaintiff appeals from the final decision of the Defendant Commissioner of Social Security, which denied his application for disability insurance benefits. The Parties have consented to the jurisdiction of a magistrate judge. Dkts. 6, 8. For the reasons discussed below, the Court **AFFIRMS IN PART** and **REVERSES IN PART** the decision of the Commissioner and **REMANDS** the case for further proceedings.

I.     **BACKGROUND**

On or about April 20, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits. *See* Dkts. 11–11-9 (Administrative Record ("AR")) 229-31, 236-37. Plaintiff's claim was denied initially on July 21, 2022 (AR 118) and denied on reconsideration on December 28, 2022 (AR 140). On February 6, 2024, an Administrative Law Judge ("ALJ") held a telephonic hearing. AR 40-83. On March 26, 2024, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 14-33 (the "ALJ Decision").

---

[1] The Court takes notice of the fact that, on November 30, 2024, Carolyn W. Colvin became the Acting Commissioner of Social Security, who served until January 19, 2025. This was followed by Michelle King (January 20, 2025, to February 16, 2025) and finally Leland Dudek as the current Acting Commissioner. *See* https://www.ssa.gov/history/commissioners.html. Accordingly, Leland Dudek is substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 408(g).

In applying the sequential evaluation process for determining disability, at step 3 the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the left shoulder, obesity, diverticulosis, depression disorder and anxiety disorder. AR 20-22. At step 4, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. AR 22-25. At step 5, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. AR 25-31. The ALJ also found that Plaintiff could not perform any of his relevant past work (AR 31) but that, considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs that exist in significant numbers in the national economy such as marker, routing clerk and parking lot attendant (AR 32). The ALJ thus found that Plaintiff was not under a disability, as defined by the Social Security Act, from April 20, 2022 through the date of the ALJ Decision. AR 33.

The Appeals Council subsequently denied review of the ALJ Decision. AR 1-6. Plaintiff timely filed an action in this District seeking review of the ALJ Decision. Dkt. 1. In accordance with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the Parties have presented the action for decision on the briefs. Dkt. 12; Dkt. 14; Dkt. 15; *see* Fed. R. Civ. P. Supp. SS Rule 5. The action is now ready for decision without oral argument.

**II.    ISSUES FOR REVIEW**

1. Did the ALJ properly address Plaintiff's allegations of pain and dysfunction?
2. Did the ALJ properly address the medical opinion evidence of:
    a. The psychological consultive examiner Pauline Bonilla, Psy.D.?
    b. The physician Marylou Romo-Gritzewsky, M.D.?
3. Was the ALJ's RFC finding supported by substantial evidence?
4. Did the ALJ appropriately determine at step five that Plaintiff was able to perform a significant number of jobs in the national economy?

////

////

////

### III. STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492.

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up and citations omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," (internal quotation marks and citations omitted)). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

However, in cases where "a claimant's symptom testimony is discredited," the Ninth Circuit has "established a two-step analysis" that the ALJ must engage in. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. Second, if "the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo*, 871 F.3d

at 678.  At the same time, "[t]he standard isn't whether [this Court] is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).  This standard thus "requires an ALJ to show his work." *Id.*

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

IV.  **DISCUSSION**

   A.  **Issue One: The ALJ Properly Evaluated Plaintiff's Reported Symptoms**

Plaintiff complains that the ALJ improperly discounted the following:  Plaintiff's reported impairments (anxiety, depression, stomach pain, back pain, neck pain and shoulder pain); his report that "he was not able to lift more than 5 pounds or sit for more than 5 minutes;" and his report that "his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use his hands."  Dkt. 12 at Dkt. p. 7 (citing AR 281, 299, 304).  Plaintiff testified as to these symptoms in detail during the hearing.  *E.g.*, AR 50-51 (stomach pain), 53 (abdominal/stomach pain), 55-57 (various pain and impairments), 57-58 (shoulder pain and related limitations of movement), 59-60 (stomach pain).

As an initial matter, the ALJ did not discount all of Plaintiff's reported impairments; indeed, the ALJ found that Plaintiff did suffer from, *inter alia*, anxiety, depression and degenerative disease of the left shoulder consistent with Plaintiff's reported impairments.  AR 20-22.  Although is possible to read the ALJ Decision as discounting Plaintiff's reports of stomach pain, *e.g.*, by finding that there was "no probative evidence that [Plaintiff's previously diagnosed hernia, gastritis, colon polyp, or gastroesophageal reflux] more than minimally affects the claimant's ability to perform basic work functions," the ALJ did find that Plaintiff had severe diverticulosis which is consistent with Plaintiff's reports of stomach pain.  AR 20-21, 26, 28.  Indeed, the ALJ made clear that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;" it was the reported "intensity, persistence, and

4

limiting effects of these symptoms" which the ALJ discounted. AR 25.

In other words, the ALJ discredited Plaintiff's reports that "he was not able to lift more than 5 pounds or sit for more than 5 minutes" and his report that "his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use his hands." *See* Dkt. 12 at Dkt. p. 7; AR 57, 59. Accordingly, the ALJ must have provided "specific, clear and convincing reasons for doing so." *Trevizo*, 871 F.3d at 678. Here, the ALJ cited to various detailed findings from physical exams and CT scans that, *e.g.*, Plaintiff had "normal and unassisted gait, intact coordination, and improved left shoulder strength and range of motion after [Plaintiff's] surgery" and that Plaintiff's "left shoulder showed reduced but good strength of 4/5 and tenderness, but also active elevation to 130 degrees and no swelling … [and later] improved elevation of 140 actively and 160 passively." AR 26-27. The ALJ concluded that:

> This evidence generally demonstrating normal and unassisted gait, intact coordination, improved left shoulder strength and range of motion after surgery, and generally unremarkable abdominal exam findings are inconsistent with the claimant's allegations of extreme limitations in standing, walking, sitting, and lifting. Rather, the claimant's diverticulosis limits his ability to lift and carry heavy items. The claimant's shoulder impairment further imposes some left upper extremity pushing, pulling, and reaching limitations.

AR 28. Additionally, the ALJ considered Plaintiff's daily living activities, including the reports that he "can drive a car and go places alone, can go grocery shopping in stores and by phone, and can bills…" as indicative of the limitations found by the ALJ, which were less restrictive than those testified to by Plaintiff. AR 29; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including … the claimant's daily activities."), *superseded on other grounds by superseded on other grounds by* 20 C.F.R § 404.1502(a).[2]

---

[2] It is true that, in explaining the ALJ's reasons, the ALJ Decision fails to grapple with some of Plaintiff's testimony—in particular, the ALJ cited as evidence that "claimant testified that he did not take any medications for pain" but failed to address Plaintiff's explanation that the medication caused Plaintiff constipation and "ma[d]e[] everything worse." *Compare* AR 27 *with* AR 56. While such "cherry-pick[ing]" may be improper as to *this* piece of evidence, (*see Lilita H. v. Kijakazi*, No. 21-CV-04063-JSC, 2022 WL 4225395, at *3 (N.D. Cal. Sept. 13, 2022)), it does not

Accordingly, "[t]he ALJ properly discounted [Plaintiff's] subjective pain testimony and self-reported limitations because (1) the objective medical evidence was inconsistent with those limitations, (2) [Plaintiff] acknowledged that []he routinely performed several daily activities, notwithstanding h[is] caveats, and (3) generally [the recommended] treatment had been conservative." *See Smartt*, 53 F.4th at 497.  The Court does not reverse the ALJ on this ground.

### B.  Issue Two: Did the ALJ Properly Address the Medical Opinion Evidence

Next, Plaintiff argues that the ALJ failed to properly evaluate the medical source opinions of two doctors: psychological consultive examiner, Pauline Bonilla, Psy.D. and Plaintiff's physician, Marylou Romo-Gritzewsky, M.D.  Dkt. 12 at Dkt. pp. 6-13.  Under current regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  The ALJ must "'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (quoting 20 C.F.R. § 404.1520c(b)).  The Court addresses the treatment of each doctor, in turn.

#### 1.  The ALJ Did Not Properly Address All of the Opinions of Dr. Bonilla

Plaintiff contends that, despite finding that "Dr. Bonilla's opinion was persuasive … the ALJ failed to incorporate crucial limitations assessed by Dr. Bonilla."  Dkt. 12 at Dkt. p. 8.

Specifically, the remaining[3] overlooked opinions are:  (1) that Plaintiff's "ability to complete a normal workday/workweek without interruption from a psychiatric condition is moderately impaired;" and (2) that his likelihood "of emotionally deteriorating in a work environment [was] minimal to moderate."  AR 1232;  *see* Dkt. 12 at Dkt. pp. 8-9.  The Commissioner argues that the ALJ did account for these opinions by "includ[ing] limitations …

---

detract from the other specific, clear and convincing reasons cited by the ALJ.
[3] In his reply, Plaintiff concedes that the RFC pointed to by Commissioner "conceivably accounted for" two of Dr. Bonilla's assessments but maintains it "did not account for Plaintiff's deficits in completing a normal workday/workweek[] and the likelihood that he would have episodes of emotional decompensation." Dkt. 19 at Dkt. p. 3. Under the substantial evidence standard, where "evidence exists to support more than one rational interpretation, [this Court] must defer to the Commissioner's decision." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

related to interruptions from psychological symptoms, stress, and emotional deterioration on a mild to moderate level." Dkt. 8 at 8-9.  But the only part of the ALJ Decision that Commissioner points to is the ALJ's "translat[ion]" of Dr. Bonilla's opinions into the limitation requiring "simple instructions that do not require a specific production rate with occasional changes in a routine work setting." *Id.* at 8 (citing AR 30).  The Ninth Circuit has previously held that an opinion that a claimant "faced moderate limitations in her ability to respond appropriately to usual work situations … is distinct from [her] limited ability to interact with others, to understand, remember, and follow complex instructions, and to make judgments on complex work-related activities." *Bagby v. Comm'r of Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015).  With similar reasoning, this Court agrees that Plaintiff's moderate limitation on his ability to complete a normal workday/workweek without interruption and mild to moderate likelihood of emotional decompensation are distinct from the ALJ's findings that he "can carry out simple instructions, cannot perform work that requires a specific production rate … and can deal with occasional changes in a routine work setting." *See Atkinson v. Colvin*, No. 14-cv-2337-GJS, 2015 WL 5840210, at *3 (C.D. Cal. Oct. 5, 2015) (finding as "not persuasive" the argument that an "RFC restriction to non-complex tasks … sufficiently account[ed] for Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption.").  Accordingly, by failing to incorporate Dr. Bonilla's opinions in the RFC despite crediting them, the ALJ erred.[4]

---

[4] It is also possible to read the ALJ's Decision as intentionally dismissing some of Dr. Bonilla's opinions and finding them unpersuasive, to the extent they go beyond the RFC.  *See* AR 30 ("…to the extent that [Dr. Bonilla's opinion] suggests an ability to do work involving simple instructions that does not require a specific production rate with occasional changes in a routine work setting, *as stated in the residual functional capacity*, I find it persuasive…." (emphasis added)).  To the extent this is what occurred, it does not change the outcome, as the ALJ would have committed legal error by failing to supply any evidence—let alone substantial evidence—for discounting the remainder of Dr. Bonilla's opinion and have gotten the analysis backwards.  *Cf. M.M. v. O'Malley*, 732 F. Supp. 3d 1126, 1133 (N.D. Cal. 2024) ("Moreover, the opinion does not identify which of M.M.'s alleged symptoms or limitations the ALJ is discounting or why.  Instead, the opinion simply concludes that the claimant 'does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.'  This analysis is backwards.  A claimant's residual functional capacity is defined in terms of their limitations, not vice versa." (citations omitted)).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. "An error is harmless only if it is inconsequential to the ultimate nondisability determination … or if despite the legal error, the agency's path may reasonably be discerned." *Id.* at 494 (internal citations and quotations omitted). Here, the ALJ's error was not harmless. The ALJ failed to account for Dr. Bonilla's opinions as to Plaintiff's ability to complete a normal workday/workweek without interruption and the likelihood of his emotional decompensation in determining appropriate limitations in Plaintiff's RFC. *See* AR 25. The ALJ proceeded to apply this erroneous RFC to determine that jobs existed in significant numbers in the national economy that Plaintiff could perform. AR 32-33. Indeed, the ALJ explained that the vocational expert was asked "whether jobs exist in the national economy for an individual with claimant's age, education, work experience, and [RFC]," and relied on the vocational expert's testimony as to the jobs of marker, routing clerk and parking lot attendant. *Id.*; *see also* AR 67-83 (examination of vocational expert; in particular, hypothetical nos. 1-4). But, as the vocational expert admitted on examination by Plaintiff's attorney, changing the hypotheticals by adding "extra breaks during the day" was "in a general sense … not going to be acceptable for a supervisor in any of the jobs" the vocational expert offered. AR 78. Neither the ALJ nor Plaintiff's attorney elicited testimony as to what jobs *would* be acceptable with, *e.g.*, "extra breaks during the day," and there is thus no evidence that such jobs exist in significant numbers—undermining the determination of nondisability.

Thus, the ALJ's Decision and the examination of the vocational expert in the hearing make clear that the ALJ's omission of Dr. Bonilla's opinion, in particular as to Plaintiff's ability to complete a normal workday/workweek without interruption, was not "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 492. It is also "not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018). Accordingly, the error was not harmless and the Commissioner's decision is thus **REVERSED**.

////

////

### 2. The ALJ Properly Addressed the Opinions Of Dr. Romo-Gritzewsky

As for the medical opinions of Plaintiff's physician, Dr. Romo-Gritzewsky, the ALJ did not find these medical opinions persuasive. AR 29-30. Again, the ALJ must "'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant ... objective medical evidence." *Id.* at 792-93 (internal quotations and citations omitted). "Consistency means the extent to which a medical opinion is consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (same).

Here, unlike with Dr. Bonilla's opinions, the ALJ did address all of the medical opinions of Dr. Romo-Gritzewsky—including those pointed to by Plaintiff—and found them unpersuasive. AR 29-30. With regard to supportability, the ALJ explained that they were unpersuasive because "they are not supported by reference to objective medical evidence that would suggest such extreme physical limitation, but rather appear to be primarily based on claimant's subjective reports of pain." *Id.* With regard to consistency, the ALJ found that, when considering the various physical examination findings post-shoulder surgery, as well as the physical examination findings and CT scans showing normal bowel function, Dr. Romo-Gritzewsky's opinions were not consistent with the medical record. AR 30. In essence, these reasons are the same as those the ALJ gave for discounting Plaintiff's subjective pain testimony. *See* AR 20-27. Indeed, the ALJ's supportability finding relies upon discounting Plaintiff's subjective pain testimony. *See* AR 29. So, having found that the ALJ did not err in discounting such testimony, (*see, supra*, § IV.A), this Court finds that there was substantial evidence to support the ALJ's discounting of Dr. Romo-Gritzewsky's medical opinions. Accordingly, the Court does not reverse the ALJ on this ground.

////

////

////

////

### C. Issue Three: The ALJ's Determination of Residual Functional Capacity Was Not Supported by Substantial Evidence

Plaintiff also argues that "the ALJ's [RFC] finding did not include all of Plaintiff's limitations." Dkt. 12 at Dtk. p. 14. Plaintiff does not explicitly re-incorporate his arguments related to issues one and two, but the Court finds that, given the ALJ's failure to account for two of Dr. Bonilla's opinions in the RFC determination, the RFC determination was not supported by substantial evidence. *See, supra*, § IV.B.1.

Beyond those issues, Plaintiff argues that the ALJ also made inconsistent and contradictory findings relating to Plaintiff's RFC and failed to explain them. *Id.* Plaintiff argues that the ALJ found Plaintiff's limitations to be "fully accounted for in the residual functional capacity, in the assignment of sedentary exertion with additional limits" while simultaneously finding that Plaintiff was capable of performing light work with certain additional limitations. *See id.* (comparing AR 21 with AR 25). The Commissioner does not respond that there was adequate explanation but rather that Plaintiff is "conflat[ing] physical exertional definitions" and that there is nothing inconsistent about the ALJ's findings. Dkt. 18 at 6-7.

The Court agrees with Commissioner. "Sedentary work involves lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567(a). Whereas "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). If the ALJ had found Plaintiff to be suitable to both sedentary work and light work simultaneously, that might indeed require some explanation. But the ALJ did not find that Plaintiff was limited to performing sedentary work. AR 21. Rather, the ALJ found that Plaintiff could be assigned to "sedentary exertion with additional limitations." *Id.* This is not a defined term in the C.F.R., but rather appears to be used by the ALJ to refer to the more sedentary nature of Plaintiff's unique limitations. That is, a rational interpretation of the ALJ's Decision is that the ALJ did not find that Plaintiff could perform sedentary work; rather that the ALJ found that Plaintiff could perform light work, "*except* [that] he can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday," among additional limitations, *i.e.*, a more sedentary form of light work. *Compare* AR 25 *with* Social Security Ruling 83-10,

10

(S.S.R. Cum. Ed. 1983).

Moreover, because the hypotheticals upon which the vocational expert ("VE") opined and the ALJ relied included the same light work limitations that ultimately underpinned the ALJ's determination of nondisability, even if there were some inconsistency present, this error would be harmless. *See Brown-Hunter*, 806 F.3d at 492 (9th Cir. 2015) (legal error is harmless if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.").

Accordingly, the Court will **REVERSE** decision and **REMAND** for further proceedings to re-determine the RFC **only** as it relates to the ALJ's failure to account for Dr. Bonilla's opinions as explained in Section IV.B.1.

D.  **Issue Four: The ALJ's Determination That Plaintiff Could Perform a Significant Number of Jobs in the National Economy Was Not Supported by Substantial Evidence**

Finally, Plaintiff challenges the ALJ's finding that Plaintiff was not disabled because he was able to perform a significant number of jobs in the national economy, such as marker, routing clerk and parking lot attendant. Dkt. 12 at Dkt. pp. 14-19. As explained in Sections IV.B.1. and IV.C., above, the vocational expert's testimony addressed four hypotheticals posed by the ALJ, none of which properly accounted for limitations based on Dr. Bonilla's medical opinions. *See supra*, §§ IV.B.1. IV.C. Accordingly, as with the ALJ's RFC finding, the Court **REVERSES** the ALJ's finding that the Plaintiff could perform a jobs that exist in significant numbers in the national economy because it is unsupported by adequate vocational expert testimony.

Plaintiff raised two additional challenges to the sufficiency of the vocational expert testimony, based on (1) the phrasing of the ALJ's hypotheticals and (2) the vocational expert's lack of explanation for purported inconsistencies between the testimony and the Dictionary of Occupational Titles ("DOT"). Dkt. 12 at Dkt. pp. 14-19. However, because the Court has found that the determined RFC and the vocational expert's testimony did not properly account for Dr. Bonilla's opinions, new vocational expert testimony will be required and these challenges are thus moot. Accordingly, the Court **DENIES as moot** Plaintiff's request for remand on these grounds.

////

## V. CONCLUSION

For the forgoing reasons, the Court **REVERSES IN PART** the ALJ's Decision. The Court **REVERSES** the ALJ's finding as to Plaintiff's residual functional capacity as insufficiently accounting for the medical source opinions of Dr. Bonilla and, accordingly, **REVERSES** the ALJ's determination of nondisability as insufficiently supported by vocational expert testimony or other evidence accounting for such opinions. The Court otherwise **AFFIRMS** the ALJ's findings. The case is **REMANDED** for further proceedings in accordance with this order.

**SO ORDERED.**

Dated: May 6, 2025

SUSAN VAN KEULEN
United States Magistrate Judge